FILED ___ LODGED
RECEIVED ___ COPY

DEC 1 8 2018

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

REDACTED FOR
PUBLIC DISCLOSURE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Kevin Scott Wynn,<br><br>　　　　Defendant. | CR-18-01649-PHX-SMB (BSB)<br><br>**INDICTMENT**<br><br>VIO:　26 U.S.C. § 7201<br>　　　(Tax Evasion)<br>　　　Count 1<br><br>　　　26 U.S.C. § 7203<br>　　　(Failure to File)<br>　　　Counts 2-4 |

THE GRAND JURY CHARGES:

At all times material to this indictment, within the District of Arizona and elsewhere:

1.　Starting in 1995, KEVIN SCOTT WYNN determined to no longer file personal income taxes, or to pay taxes on his income to the Internal Revenue Service ("IRS"). Instead of paying the taxes he owed, WYNN kept the money for himself and spent it on his personal lifestyle. The IRS began the process of assessing past due taxes based on third parties' reports of money paid to or through WYNN. WYNN eventually began to conceal assets from the IRS through the use of a nominee, and failed to produce that nominee account when summonsed by the IRS.

**Background**

2.　WYNN has worked in the construction business since at least 1996, through companies controlled by him, including SCC Southwest Construction and Black River

Construction and Development, and, more recently, Wynn Companies. In later years he also operated a Mesa bar known as Monsterland.

3. WYNN has resided principally in Alpine, Arizona and Mesa, Arizona since 1996.

4. WYNN had a prior tax lien from Maricopa County assessed against him in 1986 for unpaid federal taxes arising out of earnings from Wynn's Pool Services. WYNN satisfied the lien in 1988.

5. Following WYNN's failure to file a personal income tax return in 1995 and the following years, the IRS conducted a correspondence exam, based on earnings reported to the IRS by third parties who had paid money to WYNN, and assessed taxes on WYNN for the 1999, 2000 and 2002 calendar years.

6. On October 3, 2005, the IRS mailed the results of the 1999 and 2000 assessment to WYNN at a PO Box in Lakeside, Arizona. The correspondence was returned to the IRS "not deliverable as addressed/unable to forward" on October 20, 2005. The IRS subsequently filed tax liens for the 1999, 2000 and 2002 tax years against WYNN, first in Navajo County and subsequently in Maricopa County.

   a. WYNN was assessed a tax of $43,311.00 for the 1999 tax year, and together with penalties and interest he owed $89,247.88 as of the date of the assessment.

   b. WYNN was assessed a tax of $89,848.00 for the 2000 tax year, and together with penalties and interest he owed $172,053.25 as of the date of the assessment.

   c. WYNN was assessed a tax of $8,775.00 for the 2002 tax year, and together with penalties and interest he owed $14,028.69 as of the date of the assessment.

   d. The IRS has also calculated additional tax for tax years 2010 ($230,832.00), 2011 ($121,661.00) and 2013 ($63,535.00). The IRS also identified significant gross income for WYNN in 2012, but applied that income against losses creating a net operating loss for tax year 2012. That net operating loss was then carried back and applied towards the calculated tax due and owing for 2010.

7. In March 2008 WYNN applied to refinance the mortgage on his residence in

Alpine, Arizona. In the application he was asked if he was "presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee." He falsely answered "No." He also appended to the application a signed copy of a 2005 federal income tax return in which he claimed to have paid estimated taxes of $40,000, and a signed copy of a 2006 federal income tax return in which he claimed to have paid estimated taxes of $44,000. In fact, he never paid estimated taxes in 2005 or in 2006, and he did not file any personal income tax returns with the IRS for those tax years (or any other tax years from 1995 onwards).

8. Notwithstanding the return of the 2005 assessment mailing, WYNN learned of the assessments at least as early as 2009 when a tax lien presented an obstacle to a financial transaction.

9. In or around December 2010, WYNN signed a credit application for the acquisition of a BMW 650i Coupe. In that application he represented that he earned a salary of $25,000 per month, and additional business profit of $40,000 per month. WYNN declined to file a tax return or pay taxes for the 2010 calendar year.

10. WYNN was contacted by an IRS employee about the 1999, 2000 and 2002 assessments no later than May 2011. On May 27, 2011, WYNN wrote a letter to the IRS in which he stated as follows: "[The IRS employee] told me I was "Required" to file tax returns. I would appreciate a letter saying just that. I am more than willing to comply if it is "required" or Mandatory."

## COUNT 1
## (26 U.S.C. § 7201)
## Tax Evasion

11. The factual allegations in the foregoing paragraphs are incorporated by reference and re-alleged as though fully set forth herein.

12. From on or about May 2011 through November 2014, in the District of Arizona and elsewhere, KEVIN SCOTT WYNN did willfully evade and defeat, and attempt to evade and defeat, the payment of a substantial part of the federal income tax

owed by him to the United States for tax years 1999, 2000 and 2002, by committing the following affirmative acts (among others):

  a. Between May 2011 and August 2011, WYNN discussed with his assistant A.F. the opening of a bank account in A.F.'s name into which he could place monies from his various companies.

  b. On August 2, 2011, in California, A.F. opened account -8050 at Bank of America in California, under her name and signature. WYNN was included as a beneficiary of the account.

  c. In August 2011 WYNN began to send money controlled by him to account -8050. At WYNN's direction, A.F. deposited $45,349.51 on August 2, 2011. The deposit consisted of three checks signed by A.F. from the business accounts of Black River Construction, Wynn Companies and Monsterland.

  d. As of April 2012, A.F. had moved to Mesa, Arizona, where, at WYNN's direction, she continued to transfer WYNN's money to her account at Bank of America.

  e. On or about September 14, 2012, a revenue officer sent a communication to WYNN with respect to unfiled tax years 2006-2010. On or about September 14, 2012, WYNN sent return correspondence. He advocated for his Constitutional Right to Labor, requested that the IRS remove the tax lien, and declared to the revenue officer that "[t]he IRS has policies to Punish Employees who Violate procedures and Citizen Civil and Constitutional Rights."

  f. Following the communication with the IRS, A.F., at WYNN's direction, deposited $16,160 of WYNN's money into account -8050.

  g. WYNN ceased to use account -8050 to conceal money after September 20, because A.F. left his employment.

  h. On or about October 2, 2012, the IRS sent WYNN a detailed letter responding to his September missive. The letter unequivocally declares his positions about taxes "frivolous." The letter also included a brochure rebutting "commonly used frivolous

arguments" and restates why residents must pay taxes.

      h.    The IRS served a summons upon WYNN on September 25, 2014. The summons sought all documents supporting business income from 2007 through 2012. WYNN responded on November 17, 2014, and included some Bank of America documentation for his business accounts. He failed to include, and made no mention of, account -8050 into which he had placed $235,349.51 in 2011 and $161,425.42 in 2012.

All in violation of Title 26, United States Code, Section 7201.

## COUNT 2
## (26 U.S.C. § 7203)
## Failure to File

During the calendar year 2011, KEVIN SCOTT WYNN, whose principal place of business was in Arizona, had and received gross income in excess of $9,500. By reason of that gross income, he was required by law, following the close of the calendar year 2011 and on or before April 17, 2012, to make an income tax return to the applicable IRS Service Center, or to a person assigned to receive returns at the applicable local office, or to another IRS office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deduction and credits to which he was entitled. Well knowing and believing all the foregoing, he did willfully fail, on or about April 17, 2012, in the District of Arizona and elsewhere, to make an income tax return.

All in violation of Title 26, United States Code, Section 7203.

## COUNT 3
## (26 U.S.C. § 7203)
## Failure to File

During the calendar year 2012, KEVIN SCOTT WYNN, whose principal place of business was in Arizona, had and received gross income in excess of $9,750. By reason of that gross income, he was required by law, following the close of the calendar year 2012 and on or before April 15, 2013, to make an income tax return to the applicable IRS Service Center, or to a person assigned to receive returns at the applicable local office, or to another

IRS office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deduction and credits to which he was entitled. Well knowing and believing all the foregoing, he did willfully fail, on or about April 15, 2013, in the District of Arizona and elsewhere, to make an income tax return.

All in violation of Title 26, United States Code, Section 7203.

## COUNT 4
## (26 U.S.C. § 7203)
### Failure to File

During the calendar year 2013, KEVIN SCOTT WYNN, whose principal place of business was in Arizona, had and received gross income in excess of $10,000. By reason of that gross income, he was required by law, following the close of the calendar year 2013 and on or before April 15, 2014, to make an income tax return to the applicable IRS Service Center, or to a person assigned to receive returns at the applicable local office, or to another IRS office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deduction and credits to which he was entitled. Well knowing and believing all the foregoing, he did willfully fail, on or about April 15, 2014, in the District of Arizona and elsewhere, to make an income tax return.

All in violation of Title 26, United States Code, Section 7203.

A TRUE BILL

s/
FOREPERSON OF THE GRAND JURY
Date: December 18, 2018

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

s/
GARY M. RESTAINO
Assistant U.S. Attorney